### 70275. HALL v. THE STATE.
### 70276. VICKERY v. THE STATE.
#### (336 SE2d 291)

POPE, Judge.

Appellants Gary Lynn Hall and Patricia Ann Vickery were jointly tried and convicted of possessing 80 pounds of marijuana in violation of the Georgia Controlled Substances Act. OCGA § 16-13-30 (j). These appeals from their convictions raise similar issues and thus are consolidated for the purpose of review.

1. Both appellants first cite as error the admission of a tape recorded telephone conversation between appellant Vickery and her brother, Mark Perano, who had become a confidential informant. The trial court held a hearing outside the jury's presence to determine the admissibility of the tape recording. Finding that a proper foundation had been laid, the trial court admitted the tape recorded conversation.

A comprehensive set of standards for the admission of sound recordings has been set forth by this court in *Steve M. Solomon, Jr., Inc. v. Edgar,* 92 Ga. App. 207 (3) (88 SE2d 167) (1955). The requirements were approved by the Supreme Court in *Central of Ga. R. Co. v. Collins,* 232 Ga. 790 (3) (209 SE2d 1) (1974). Among the requirements of laying a proper foundation found in *Solomon,* supra at 212, is the requirement that the State show "that the testimony elicited was freely and voluntarily made, without any kind of duress." See also OCGA § 16-11-66. This is now the sole basis upon which the appellants contend that the tape recording was inadmissible. It is argued that Mark Perano, the confidential informant, did not voluntarily consent to the tape recording of the conversation. The evidence shows that officers with the Columbia County Sheriff's Department arrested Perano for possessing approximately 22 pounds of marijuana. An officer testified that after his arrest, Perano agreed to help the authorities in capturing his source of drugs because Perano said he had a job now and a family to think of. The officer further testified that he did not promise Perano or his wife any benefit or reward if Perano cooperated. According to the officer, "I told him . . . that any testimony that I might be able to provide to a judge or a jury concerning his assistance to us in arresting his sources of marijuana could be helpful to him." After he was granted immunity, Perano testified that he did not object to the officers' recording the telephone conversation because he did not know if tape recording was right or wrong.

Perano further testified that he cooperated because he was afraid of the officers and because they had told him that they were going to arrest his wife and take away his baby. Such evidence reveals a conflict as to whether Perano consented to the conversation and the tape recording thereof. This conflict was resolved by the trial court in favor of admissibility, and we do not find this ruling clearly erroneous. See *Ramsey v. State*, 165 Ga. App. 854 (3) (303 SE2d 32) (1983). "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to admissibility will be upheld on appeal. [Cit.]" *Crowe v. State*, 160 Ga. App. 189 (287 SE2d 56) (1981); see *Brooks v. State*, 141 Ga. App. 725 (8) (234 SE2d 541) (1977).

2. Both appellants cite as error the trial court's denial of their motion to suppress evidence which they argue was illegally seized from the trunk of appellant Hall's car. Appellants contend that the police were required to obtain a search warrant before searching the car because the police had probable cause and no exigent circumstances existed. The evidence adduced at the hearing on the motion to suppress shows the following circumstances relative to the search and seizure of the car and appellants' arrest: After Perano decided to cooperate with investigators in capturing his drug suppliers, Perano identified appellants as his suppliers and gave investigators their description. Perano told investigators that within the next three days, appellants would be traveling to the Augusta area in a brown Oldsmobile Delta 88 bearing Mississippi license plates with approximately 80 pounds of marijuana. Perano also told investigators that when appellant Hall came to Augusta, Hall preferred to stay at the Ramada Inn in Richmond County. Perano related that Hall had been arrested in Mississippi for possession of marijuana and sentenced to jail and was currently free on an appeal bond. Mississippi authorities were contacted and they confirmed the information Perano had supplied. The Mississippi authorities also provided the investigators with more details of the description of Hall's car and his criminal record. Subsequently, the investigators began tape recording telephone calls received at Perano's house. By a telephone call received on October 11, 1983, investigators learned appellants were en route to Augusta. Around-the-clock surveillance of the Ramada Inn was then begun. At approximately 3:00 p.m. on October 12, investigators spotted appellants checking into the Ramada Inn. A GBI agent testified that he and other agents, using binoculars from an elevated position, were unable to see any marijuana in the car or on the persons of appellants. According to a county investigator, since the car was not under surveillance as it entered Richmond County, the investigators were not certain whether the marijuana was indeed in the car or whether appellants had stopped and hidden it on their way into the Augusta area. Investigators observed appellants at the motel for approximately

two hours before appellants left the motel in Hall's car. When appellants exited I-20 at Belair Road, approximately one mile from Perano's house, the investigators immediately believed the marijuana was in the car. When the investigators moved in, appellants attempted to escape, but police cars pinned them in on both sides forcing them to stop. After appellants were taken into custody, investigators, without a search warrant, searched the car and found three bales of marijuana and a shoebox containing $53,600 in the trunk.

Generally, searches conducted without a warrant "are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U. S. 347, 357 (88 SC 507, 19 LE2d 576) (1967). Among these exceptions is the "automobile exception" set forth by the United States Supreme Court in *Carroll v. United States*, 267 U. S. 132 (45 SC 280, 69 LE 543) (1925). This exception allows a warrantless search whenever "(1) probable cause to believe that the automobile contains contraband or evidence of a crime conjoins with (2) exigent circumstances making the warrant procedure impractical and causing the resort to an immediate warrantless search to be reasonable and necessary. [Cits.]" *McDonald v. State*, 156 Ga. App. 143, 144 (273 SE2d 881) (1980). Appellants concede that the police had probable cause to obtain a warrant to search the car based on the information received from Perano and authorities in Mississippi. Appellants argue, however, that the investigators improperly ignored the evidence of probable cause and waited for appellants to act in a way to create an appearance of exigency in violation of constitutional search and seizure principles.

"[T]he inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." *South Dakota v. Opperman*, 428 U. S. 364, 367 (96 SC 3092, 49 LE2d 1000) (1976). This court recently stated: " 'One of the exigent circumstances justifying a warrantless search is where there is a seizure and search of a moving vehicle. [Cit.] The word "automobile" is not a talisman however and unless the vehicle is moving or is readily movable there are no exigent circumstances and a warrant is required. (Cit.) When the vehicle is moving however, there is only a requirement that the search and seizure be based upon sufficient probable cause.' [Cits.]" *State v. Estrado*, 170 Ga. App. 889, 891 (318 SE2d 505) (1984); see *Smith v. State*, 135 Ga. App. 424 (218 SE2d 133) (1975); *California v. Carney*, 471 U. S. ___ (105 SC 2066, 85 LE2d 406) (1985); *United States v. Ross*, 456 U. S. 798 (102 SC 2157, 72 LE2d 572) (1982). See also *Holmes v. State*, 163 Ga. App. 753 (1) (294 SE2d 719) (1982). Since appellants concede probable cause existed, we must determine whether the police were reasonable in not obtaining a search warrant

before appellants were stopped on Belair Road.

Although police may not create exigent circumstances to avoid obtaining search warrants, *Collins v. State*, 161 Ga. App. 546 (1) (287 SE2d 708) (1982), police officers are not required to search and arrest at the exact moment probable cause arises. See *United States v. Clark*, 559 F2d 420, 425 (5th Cir. 1977). In fact, the United States Supreme Court has stated: "Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. [Cit.] The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." *Cardwell v. Lewis*, 417 U. S. 583, 595-96 (94 SC 2464, 41 LE2d 325) (1974). Therefore, unless the delay is unreasonable, the police may wait and delay search and seizure in hope of increasing the quantum of evidence which they could present to the magistrate to obtain a warrant. See *United States v. Ferrara*, 539 F2d 799 (1st Cir. 1976).

In the case at bar, the trial court found that the law enforcement officers acted reasonably in not obtaining a warrant at the first practicable moment. "The trial court's decision on fact questions and credibility of witnesses at a suppression hearing must be accepted unless clearly erroneous; and his ruling will be upheld whenever there is evidence to support it." *Love v. State*, 173 Ga. App. 85, 86 (325 SE2d 449) (1984). Officers testified at the motion to suppress hearing that they did not obtain a search warrant because they were uncertain whether the marijuana was in the car or hidden in woods along the highway somewhere. It was not until appellants were a mile from Perano's house were they certain the marijuana was in the car. Accepting such testimony as true, the trial court was authorized in finding that the authorities acted reasonably in not obtaining a search warrant. Cf. *United States v. Ferrara*, supra.

3. Appellants' final enumeration of error alleges that the trial court erred in failing to grant a mistrial after the district attorney made reference in his closing argument to appellant Hall's failure to testify at trial. The record shows that the district attorney during closing argument stated: "We've got Mr. Hall. We haven't heard any evidence of entrapment so far as he is concerned. He has admitted possession here in Columbia County; he has admitted he had the stuff in the car he was driving, tried to keep the police from arresting him — they had a little wreck out there anyway — he hasn't told you about his being entrapped." Defense counsel objected and moved for

a mistrial on the ground that such remarks commented on appellant Hall's failure to testify in violation of his Fifth Amendment right not to testify. The district attorney stated that he was referring to counsel for appellants and not appellant Hall. That is, the district attorney's remarks could only have referred to assertions made by defense counsel in his opening statement because Hall himself never testified at trial. The trial court interpreted the remarks as referring to counsel for appellants and denied the motion for mistrial. In addition, the court instructed the jury as to a defendant's right not to testify and that the district attorney was not commenting on appellant Hall's failure to testify.

In *Ranger v. State*, 249 Ga. 315 (3) (290 SE2d 63) (1982), the Supreme Court adopted a two-pronged test to determine if a prosecutorial comment constitutes reversible error. " 'To reverse for improper comment by the prosecutor, we must find one of two things: that "the prosecutor's manifest intention was to comment upon the accused's failure to testify" or that the remark was "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Citations omitted.)' " Id. at 319, quoting *United States v. Rochan*, 563 F2d 1246, 1249 (5th Cir. 1977). In applying this test, the court must consider the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury. *United States v. Forrest*, 620 F2d 446, 455 (5th Cir. 1980).

Applying these standards to the facts at bar, we find that the prosecutor's remarks were not manifestly intended to be, nor would a jury naturally and necessarily construe the remarks, as a comment on Hall's failure to testify. We view as reasonable the trial court's acceptance of the district attorney's explanation that he was merely commenting on the failure of defense counsel to establish evidence of entrapment as to appellant Hall, and not commenting on Hall's failure to testify in his own behalf. See *Mitchell v. State*, 226 Ga. 450 (4) (175 SE2d 545) (1970); *Stowers v. State*, 143 Ga. App. 859 (3) (240 SE2d 227) (1977). See also *Sweatt v. State*, 149 Ga. App. 717 (1) (256 SE2d 28) (1979). In any event, any prejudicial impact on the jury was cured by the trial court's subsequent instructions. See *Parks v. State*, 208 Ga. 508 (2) (67 SE2d 716) (1951); *Simmons v. State*, 149 Ga. App. 830 (4) (256 SE2d 79) (1979). Therefore, the court did not err in denying appellants' motion for mistrial.

*Judgments affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 4, 1985 —
REHEARING DENIED OCTOBER 16, 1985.

*Michael C. Garrett*, for appellants.
*Sam B. Sibley, Jr., District Attorney*, for appellee.