A94A1594. LUCAS v. THE STATE.
(450 SE2d 313)

Ruffin, Judge.

Otis Lucas was convicted of statutory rape and incest and appeals from the entry of judgment on the conviction and sentence.

The evidence shows that between September 1, 1990, and November 29, 1990, Lucas had sexual intercourse with his thirteen-year-old stepdaughter three times under similar circumstances. In each instance, Lucas sent his wife to the store, while the victim and another young family member remained at home with Lucas. Lucas told the other child not to open the door for anyone and to remain in the living room while the victim was called to join Lucas in the bedroom he shared with his wife, the victim's mother. Lucas then told the victim to take off her clothes and lie down on the bed. Lucas removed his clothes and had intercourse with the victim. Lucas had been drinking vodka prior to each incident.

The victim told her mother about the third incident, and the mother told the victim to let her know if it happened again. Shortly thereafter, Lucas sent his wife and other adult family members in the home to a junkyard, again leaving the victim and another young family member at home with Lucas. Lucas called the victim to his bedroom, told her to remove her pants, and performed oral sex. When the mother returned, the victim told the mother that Lucas had sex with her. The mother confronted Lucas, he denied having sex with the victim, and the mother took the victim to Grady Hospital for an examination. The examination revealed redness and swelling consistent with oral sex having been performed. The victim was taken into protective custody and interviewed, and Lucas was subsequently arrested.

1. Lucas enumerates as error the admission of the testimony of another stepdaughter as similar transaction evidence. Lucas contends the State failed to establish sufficient similarity between the independent offense and the crime charged.

Lucas' other stepdaughter testified that between 1985 and 1986, when she was 19 years old, Lucas forced her to have sex with him on numerous occasions against her will. She specifically referred to the

first incident in which she alleged that Lucas had been drinking when he violently raped her in his car while returning home from the store. She testified that Lucas raped her a second time in the car and numerous other times in their home, when his wife was away from home.

" 'Before evidence of similar offenses is admissible, two criteria must be met. First, it must be shown that appellant was the perpetrator of the similar offenses, and second, there must be sufficient similarity or connection between the independent crimes and the offense charged that proof of the former tends to prove the latter.' [Cit.]" *Murphy v. State*, 212 Ga. App. 153 (1) (442 SE2d 2) (1994). " 'There is no requirement that a previous offense be absolutely identical to the one being prosecuted so as to make it admissible.' [Cit.]" *Cantrell v. State*, 212 Ga. App. 288, 289 (1) (441 SE2d 879) (1994). " 'The exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses.' [Cit.] 'In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. . . . There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged.' [Cit.]" *Stine v. State*, 199 Ga. App. 898, 899 (2) (406 SE2d 292) (1991).

The acts alleged in the instant case and the acts alleged by the other stepdaughter involved similar incestuous sexual contact between Lucas and the victims. They were preceded by Lucas' drinking and occurred, for the most part, when Lucas' wife, the victims' mother, was safely away from the home and Lucas and the victims were virtually alone at home. Thus, we find no error in the trial court's determination that there was sufficient similarity between the independent incestuous acts alleged by the other stepdaughter and those with which Lucas was charged in the instant case. See *Cooper v. State*, 173 Ga. App. 254 (1) (325 SE2d 877) (1985).

Lucas also contends that in its instruction to the jury prior to the admission of the similar transaction evidence, the court failed to state the specific purpose for which the evidence was to be considered by the jury. However, the record shows that Lucas raised no objection to the court's instruction at trial; thus, this contention will not be considered on appeal. "It is 'well settled that this court will not consider issues and grounds for objection which were not raised and passed upon in the trial court. (Cits.)' [Cit.]" *Morgan v. State*, 212 Ga. App. 394, 395 (1) (442 SE2d 257) (1994).

2. Lucas also contends the trial court erred in admitting the rebuttal testimony of Theresa Battle as her testimony improperly placed his character in issue.

Lucas testified that he tried to be a good father to the victim; that he had been her father for all intents and purposes since she was an infant; that he was the primary disciplinarian; that he had to watch out for the victim constantly; and that he often talked with the victim about boys, sex and teenage pregnancy. Lucas indicated that he had recently become concerned about her adolescent behavior and had stopped her from doing what he characterized as a "nasty dance" with other young girls in their backyard. Lucas explained that he and his wife studied the Bible and would not allow such dancing. Prior to admitting Battle's testimony, the trial court remarked that Lucas tried to give the jury the impression that he was "a paragon of virtue" with "very high standards, sexual standards." Thus, the State was allowed to present evidence in rebuttal.

Theresa Battle was present in the Lucas home on the evening the victim was at Grady Hospital with her mother following the last sexual incident with Lucas. Both Lucas and Battle testified that Lucas remained at home, drinking vodka with friends and watching television. However, the testimony of which Lucas complains is Battle's statement that Lucas offered her $100 to have sex with him and that later that night she interrupted him having sex with another woman to whom he paid $20.

" 'In a criminal case the State can not rebut or question the *presumption* of the *defendant's good character* unless the defendant discards the presumption thus afforded and *elects* to put his *actual character* in issue by evidence or by his statement to the jury.' [Cit.] However, [OCGA § 24-9-82] provides: 'A witness may be impeached by disproving the facts testified to by him.' Thus, while a criminal defendant is not subject to impeachment by proof of general bad character or prior convictions until he puts his general good character in evidence, he is subject to impeachment the same as any other witness. [Cit.]" *Favors v. State*, 145 Ga. App. 864, 865 (1) (244 SE2d 902) (1978). Evidence of prior crimes or bad acts can be admitted "where such evidence is necessary and relevant to impeach the defendant's specific testimony. [Cit.]" *Crane v. State*, 263 Ga. 518, 519 (1a) (436 SE2d 216) (1993).

Based upon our review of the cold record, we cannot say the trial court erred in admitting Battle's rebuttal testimony since the trial court had the opportunity to observe Lucas' live testimony, its determination that Lucas tried to impress the jury that he was a "paragon of virtue" with high sexual standards was supported by the evidence, and Battle's testimony was relevant rebuttal evidence.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 21, 1994.

*William C. Puckett, Jr.,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Ann G. Maseth, Assistant District Attorneys,* for appellee.